## DURKIN v. PET MILK CO.
### Civ. A. No. 1054.

United States District Court
W. D. Arkansas, Fort Smith Division.
June 17, 1953.

See also, 14 F.R.D. 374.

Jeter S. Ray, Acting Sol., Washington, D. C., Earl Street, Regional Atty., Dallas, Tex., Truett E. Bean, Dallas, Tex., for plaintiff.

Clifton Wade, Fayetteville, Ark., and Russell Elrod, Siloam Springs, Ark., for defendant.

JOHN E. MILLER, District Judge.

On October 30, 1952, Maurice J. Tobin, Secretary of Labor, United States Department of Labor, as plaintiff filed his com-

plaint seeking to enjoin defendant, a Delaware corporation authorized to do business in Arkansas and maintaining its principal office at Siloam Springs, Arkansas, from violating the minimum wage and record keeping provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq.

On December 29, 1952, defendant filed its answer in which it admitted that it was a Delaware corporation but denied all other allegations of plaintiff's complaint.

On February 18, 1953, Martin P. Durkin, Secretary of Labor, United States Department of Labor, filed his motion requesting to be substituted as plaintiff on the ground that the original plaintiff, Maurice J. Tobin, had resigned his position, being replaced by the said Martin P. Durkin, and on the same date the Court entered an order granting plaintiff's motion and substituting Martin P. Durkin as plaintiff.

The defendant, on May 19, 1953, filed its motion for production of certain documents in the possession, custody or control of the plaintiff. The attorneys for the respective parties have filed excellent briefs in support of and in opposition to the said motion, and the motion is now before the Court for disposition.

By the motion defendant moves the Court for an order requiring plaintiff to produce and to permit defendant to inspect and to copy the following:

1. Statements of certain named witnesses obtained by employees, agents or attorneys of the plaintiff prior to the filing of the complaint herein.

2. All statements obtained by employees, agents or attorneys of the plaintiff from other persons who were or had been haulers or drivers for owners of milk routes engaged in the hauling of milk from farmers to the condensery operated by defendant at Siloam Springs, Arkansas.

3. All transcripts of interviews had by employees, agents or attorneys of plaintiff with the persons described in Paragraph 2 above.

4. All written reports, digests or summaries of interviews with, or oral statements made by, the persons described in Paragraph 2 above.

Whether or not defendant's motion should be granted depends upon the answer to three questions, i. e., (1) are the requested documents privileged by reason of the common law privilege pertaining to confidential communications, or the regulations of the Department of Labor; (2) are the requested documents privileged as a part of the work product of a lawyer; and (3) has the defendant shown good cause for the production of said documents? The Court will discuss these questions in the order above stated.

## Governmental Privilege

Defendant's motion was made under rule 34, F.R.C.P., 28 U.S.C.A., which rule provides:

"Upon motion of any party *showing good cause therefor* and upon notice to all other parties, and subject to the provisions of Rule 30(b), the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, *not privileged,* which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) and which are in his possession, custody, or control * * *." (Emphasis added by Court.)

Since the rule only applies to documents "not privileged," plaintiff contends that defendant cannot obtain production of the requested documents because they are privileged by virtue of being confidential and in the custody of the Department of Labor. The Courts have not been uniform in their construction of the term "privileged" as used in rule 34, supra.

In Walling v. Comet Carriers, D.C.N.Y., 3 F.R.D. 442, beginning at page 443, the Court said, inter alia:

"Pursuant to the authority conferred on the Secretary of Labor by the Stat-

utory provision just quoted [5 U.S. C.A., Section 22], about fifteen years ago a regulation was adopted * * * which is applicable to the entire Department of Labor and which in substance (1) prohibits any document in the custody of the department or of any of its branches or of any of its officials being taken or withdrawn by any person not officially connected with the department, to which prohibition there shall be no exception 'without the written consent of the Secretary' and (2) prohibits a copy of any such document being furnished 'to any person except with the written consent of the Secretary.' * * *

"Unless I fail to discharge my duty I think it is indisputable, therefore, that the regulation, if valid, constitutes an insuperable obstacle to my directing that the documents sought pass to or to my granting permission to their being copied by the defendant. [The documents referred to included affidavits, statements and transcripts of interviews and interrogatories by employees of the defendant.]

"What I have just stated seems to me true because, in the sense of the word as used in Rule 34, obviously the documents are 'privileged' in event the Secretary was authorized to promulgate the regulation. * * *

" * * * There is no occasion for extensive discussion because the Supreme Court has specifically ruled that the regulation is valid. * * * Boske v. Comingore, 177 U.S. 459, 467–470, 20 S.Ct. 701, 44 L.Ed. 846."

See also, Walling v. J. Friedman & Co., Inc., D.C.N.Y., 61 F.Supp. 325.

But, in Walling v. Richmond Screw Anchor Co., D.C.N.Y., 4 F.R.D. 265, where the defendant sought, among other things, permission to inspect and copy plaintiff's records of the names of employees whom plaintiff claimed were under-paid, and any statements by or reports concerning the said employees, beginning at page 269 of 4 F.R.D. the Court said:

"Upon the trial the plaintiff will be required to establish which of the defendant's employees were underpaid, naming them. How can this information which must be disclosed at the trial be regarded as confidential and therefore privileged? If such information is required upon the trial, can there be any harm in plaintiff supplying such information in advance of the trial? It seems not. How then can the plaintiff be in any wise prejudiced by giving the defendant this information in advance of the trial if it be not required to produce its records for the inspection of the defendant? The answer seems obvious that it cannot be. This information might be obtained under Rule 33 of the Federal Rules of Civil Procedure * * * or at a pre-trial hearing (Rule 16 * * *). The United States Government is in no different position than any ordinary litigant and is, therefore, bound by the Rules of Civil Procedure in the same respects as an ordinary litigant. * * *

"Plaintiff argues that the motion should be denied for the reason that the reports, statements and records are confidential and privileged. Rule 34 of the Federal Rules of Civil Procedure exempts inspection of documents, papers, books, etc. which are privileged. If it is a fact that plaintiff's records are of a confidential nature they would be deemed privileged and not subject to inspection.

"This Court refuses to go so far as to decide that any and all records of a governmental agency are of a confidential nature and therefore privileged. It may very well be that in a proper case the Court would direct a governmental agency to disclose a record in its possession. The record must really be of a confidential nature, it cannot be merely thought to be such. * * * The Court is not bound by the claim of privilege unless in fact the records are of a confidential nature or might prove prejudicial to the Government or to the public interest. * * *"

In Vol. 2, Barron & Holtzoff's Federal Practice and Procedure, § 798, Page 511, it is said:

"Likewise in the Wage and Hour's Administrator's action against an employer, the Department of Labor regulation prohibiting, without the Secretary's consent, production of departmental documents for the benefit of any person not connected with the department, protects the Administrator from an order to produce affidavits, statements and transcripts of interviews and answers to interrogatories by employees. (Citing Walling v. Comet Carriers, supra) However, the Administrator may be compelled to disclose information which necessarily will be disclosed at the trial. (Citing Walling v. Richmond Screw Anchor Co., supra, and Walling v. J. Friedman & Co., D.C. N.Y.1945, 4 F.R.D. 384)."

In Vol. 4, Moore's Federal Practice, Second Edition, Section 26.25(6), Page 1170, the cases are analyzed as follows:

"The most acute problems of 'governmental privilege' arise in cases in which the Government are involved, such as civil actions by the Government to enforce the * * * Fair Labor Standards Act * * *.

"When the Government brings a civil suit in the exercise of its regulatory powers, does it stand in the position of a private litigant with respect to discovery or does it have a privileged status? In Fleming v. Bernardi, (D.C.Ohio, 4 F.R.D. 270) an action by the Administrator of the Wage-Hour Division, defendant served an interrogatory calling for the names of employees claimed to have been paid less than the minimum wage and the period during which such employees worked for the defendant. The Administrator raised numerous objections to the interrogatory, but the court overruled them all. Judge Wilkin reasoned as follows: Conceding that the Administrator's files might be privileged against discovery in a suit between private parties, the Administrator here was the plaintiff. 'It seems that when a party seeks relief in a court of law, he must be held to have waived any privilege, which he otherwise might have had, to withhold the testimony required by the rules of pleading or evidence as a basis for such relief.' The information would have to be disclosed at the trial. The privilege which the Administrator invoked was in conflict with the rules of pleading and the rules of evidence, and if the Administrator wished to recover 'he must abandon his suit for relief.' * * * 'The Administrator may well keep secret all communications until he takes action in court based upon such information; but then he must disclose such information if it is required by the rules of criminal or civil procedure as a foundation for such action.' Judge Moscowitz took the same position in Walling v. Richmond Screw Anchor Co. * * *

"All of the foregoing were cases where the defendant in an action by the Government was simply attempting to find out the details of the case against him—details to which he would be entitled if the suit were one by a private party, and which would in any event be brought out at the trial. A distinction was made in Walling v. Comet Carriers, Inc., in which Judge Caffey held that files and records of the Wage-Hour Division, consisting of 'affidavits, statements and transcripts of interviews and interrogatories by employees of the defendant' were privileged from discovery."

See also, 165 A.L.R. Pages 1338, 1347, 1351–1354.

And, in Tobin, Secretary of Labor v. Gibe, D.C.Del., 13 F.R.D. 16, defendant sought to have plaintiff produce statements taken from witnesses by an investigator of the Department of Labor. In speaking of plaintiff's objection that the statements were privileged under the applicable statutes and regulations, the Court, 13 F.R.D. at page 17, said:

"The plaintiff's second ground of objection is that there is a common-law privilege attaching to reports of citizens to public officials regarding violations of the law. There is such a privilege to protect informants on the ground of public policy. United States v. Kohler, D.C.E.D.Pa.1949, 9 F.R.D. 289. This court is of the opinion that such privilege ceases and is unnecessary after the names of the informants are voluntarily given to the defendant. * * *"

An analysis of the foregoing authorities convinces the Court that the documents requested in the instant case are not privileged by reason of the common law privilege pertaining to confidential communications, or by reason of the statute, 5 U.S. C.A. § 22, and the regulations promulgated thereunder by the Secretary of Labor. To begin with, the term "not privileged" as used in rule 34 refers to "privilege" as that term is understood in the law of evidence. United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. ——. The common law privilege attaching to communications made by informers to officials is based solely upon public policy, and where no public policy exists requiring the secrecy of such matters, there is no reason for the privilege and the privilege vanishes. The cases relied upon by plaintiff to establish his contention that the documents are privileged were cases in which the facts were such as to justify the secrecy of the material sought on the ground of public policy. For illustration, in United States v. Kohler Co., D.C.Pa., 9 F.R.D. 289 at page 290, the Court said:

"It is unnecessary to deal with the plaintiff's contention that the information withheld is privileged by virtue of the Department of Justice's Order No. 3229 of May 2, 1939, issued under the authority of R.S. § 161, 5 U.S.C.A. § 22. In my opinion its disclosure is forbidden by much broader considerations of public policy, which Wigmore (Sec. 2374) calls a genuine privilege. This policy cannot be better stated than it was in an opinion of Attorney General Jackson, 40 Op. Atty. Gen. p. 45, April 30, 1941, as follows: 'Moreover, disclosure of the reports would be of serious prejudice to the future usefulness of the Federal Bureau of Investigation. As you probably know, much of this information is given in confidence and can only be obtained upon pledge not to disclose its sources. A disclosure of the sources would embarrass informants—sometimes in their employment, sometimes in their social relations, and in extreme cases might even endanger their lives. We regard the keeping of faith with confidential informants as an indispensable condition of future efficiency.'"

■ In the instant case, however, the witnesses certainly would not be embarrassed in their social relations and their lives would not be endangered by the disclosure of their statements. And, under the circumstances in this case, any possible embarrassment to their alleged employment is so unlikely as to be insignificant. In other words, in the instant case there are no public policy grounds upon which to fasten a common law privilege protecting informants. In fact, this suit is a civil suit brought by the plaintiff against the defendant, and the plaintiff, while bringing the suit in his official capacity as Secretary of Labor, nevertheless is "in no different position than any ordinary litigant and is, therefore, bound by the Rules of Civil Procedure in the same respects as an ordinary litigant." Walling v. Richmond Screw Anchor Co., supra.

■ And certainly, as to the statements of witnesses whose names have been disclosed to the defendant, even if they were privileged in the first instance, the privilege "ceases and is unnecessary after the names of the informants are voluntarily given to the defendant." Tobin, Secretary of Labor v. Gibe, supra.

The plaintiff also relies upon Regulations of the Secretary of Labor, United States

Department of Labor, Article III, Chapter V, Sections 1 and 2. These sections provide as follows:

"Section 1. No account, letter, record, file, or other document or paper in the custody of the Department, or of any bureau, office, or officer thereof, shall on any occasion be taken or withdrawn by any agent, attorney, or other person not officially connected with the Department; no exception will be made without the written consent of the Secretary.

"Section 2. Copies of accounts, letters, records, files, and other documents or papers shall not be furnished to any person except with the written consent of the Secretary. * * *"

As to the effect of these regulations, plaintiff relies principally upon the cases of Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846; and United States ex rel. Toughy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417. However, in a concurring opinion in the latter case Mr. Justice Frankfurter, in carefully analyzing the holdings of the two cases, at page 472 of 340 U.S. at page 421 of 71 S.Ct. said:

"And the decision was strictly confined to the narrow issue before the Court. It is epitomized in the concluding paragraph of the Boske opinion: 'In our opinion the Secretary, under the regulations as to the custody, use and preservation of the records, papers and property appertaining to the business of his Department, may take from a subordinate, such as a collector, all discretion as to permitting the records in his custody to be used for any other purpose than the collection of the revenue, and reserve for his own determination all matters of that character.' 177 U.S. at page 470, 20 S.Ct. [701], 706 [44 L.Ed. 846].

"There is not a hint in the Boske opinion that the Government can shut off an appropriate judicial demand for such papers.

"* * * Specifically, the decision and opinion in this case [Toughy v. Ragen] cannot afford a basis for a future suggestion that the Attorney General can forbid every subordinate who is capable of being served by process from producing relevant documents and later contest a requirement upon him to produce on the ground that procedurally he cannot be reached. In joining the Court's opinion I assume the contrary—that the Attorney General can be reached by legal process."

The validity of the regulation is not at issue in the instant case, because the Secretary of Labor is a party to the action and "appropriate judicial demand" may be made upon him for documents which are not privileged.

Therefore, plaintiff's argument that the documents are privileged as confidential communications or by reason of departmental regulations is not valid.

## Work Product of a Lawyer

 Plaintiff also argues that the documents are privileged as a part of the "work product" of a lawyer.

In an affidavit attached to plaintiff's brief as exhibit A, affiant, Truett E. Bean, one of the attorneys of record for plaintiff, states that Investigator William C. Calvit completed the investigation of defendant's operations and that "prior to Mr. Calvit's said visits to defendant's establishments in Arkansas, affiant, as an attorney for the Secretary of Labor, United States Department of Labor, prepared a set of instructions to be followed by the investigator in conducting the investigation. These instructions included requests that the investigator obtain signed statements from milk haulers employed by defendant's establishments located in Siloam Springs, Paris and Huntsville, Arkansas. These instructions also indicated the pertinent matters to be inquired into by the investigator in his interviews with the milk haulers."

The starting point in any discussion of the work product of a lawyer should be

the case of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, wherein the Court beginning at page 510 of 329 U.S. at page 393 of 67 S.Ct. said:

"Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.

"Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways— aptly· though roughly termed by the Circuit Court of Appeals in this case as the 'Work product of the lawyer.' * * *

"We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. * * But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order."

At the outset it will be noted that the Hickman case purports to apply only to the "work product" of the *lawyer*. In Vol. 4, Moore's Federal Practice, Second Edition, it is said at page 1136:

"The fact that statements of witnesses are obtained, or other information acquired by a claim agent does not bring the rule of the Hickman case into play even if the claim agent is a lawyer. In Thomas v. Pennsylvania R. Co. (D.C.N.Y., 7 F.R.D. 610) defendant resisted discovery of statements of witnesses taken by a claim agent on the ground that they were taken on behalf of the attorney for the defendant. Judge Inch said: 'I do not agree with this effort to give this claim agent the immunity properly belonging to an attorney as distinctly limited in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 * * *'. Again in Newell v. Capital Transit Co. (D.C.D.C., 7 F.R.D. 732) Judge Schweinhaut refused to apply the holding of the Hickman case to statements taken by claim investigators of the defendant, even though it was shown that the statements were taken under the general direction of the head of the Claim Department, an attorney * *. A narrower view was taken by Judge (now Circuit Judge) Duffy in Hanke v. Milwaukee Electric Ry. & Transport Co. (D.C.Wis., 7 F.R.D. 540). There the requirement of the Hickman case,

'that the party seeking the production of statements of witnesses must make a showing for the necessity thereof or claim that the denial of such production would unduly prejudice the preparation of his case or cause hardship or injustice' was applied to written and oral statements obtained from witnesses by the claim department of the defendant. The court failed to realize that the Supreme Court had limited its holding to statements taken by an attorney. This decision, however, represents a minority view. * * *

"In a more extreme factual situation, Judge Kirkpatrick has held that statements of witnesses of the sinking of a Government-operated vessel, taken by F. B. I. agents, are not protected from discovery as the 'work product of the Department of Justice' merely because some of the F. B. I. agents were lawyers. The relationship between the investigators and the Government, the court said, 'has nothing remotely in common with the relationship between a lawyer and his client * * *' ".

In Herbst v. Chicago, Rock Island & Pacific R. Co., D.C.Iowa, 10 F. R. D. 14, plaintiff sought the production of statements taken by defendant's claim agent from members of the train crew involved in the accident. Judge Switzer, 10 F.R.D. at page 18, said:

"Defendant made a showing by the testimony of its claim agent on the hearing of plaintiff's motion that said claim agent is employed by defendant company under the supervision of the legal department of said company. Defendant contends therefore and strongly urges upon that court that any statements taken by said claim agent are privileged, being a part of the work product of a lawyer in the preparation of any litigation which might arise out of the accident in question * * *.

" * * * in the instant case, by his own admission, the claim agent stated that his investigation of this accident and the taking of the statements from the train crew was routine and done by him on his own initiative.

"I cannot, under the facts in this case, conclude that the statements taken by the claim agent from the railroad crew on the morning of the accident were in any way the work product of the lawyer in preparation for the defense of this case and thereby privileged. But, even though I were compelled to so find, still I believe a sufficient showing of good cause has been made even under the holding in Hickman v. Taylor, supra * * *."

In Hughes v. Pennsylvania R. Co., D.C. N.Y., 7 F.R.D. 737, the Court said:

"What an attorney does to prepare his client's cause for trial, and what a Claim Agent does for his employer prior to institution of a lawsuit, and which may never be embodied in a lawyer's file, are thought to be diverse products."

See also, Virginia Metal Products Corp v. Hartford Acc. & Indemnity Co., D.C. N.Y., 10 F.R.D. 374.

In Bifferato v. States Marine Corp. of Delaware, D.C.N.Y., 11 F.R.D. 44, statements were taken by *an* attorney of the defendant who was not shown to be *the* attorney for the defendant in the case. The Court, 11 F.R.D. at page 46, said:

"It is a fair inference that the procurement of the statements from crew members was not the result of any basic professional relationship between the lawyer who obtained them and the defendant, or that it required the training, skill and knowledge of a lawyer or the essential integrity implicit in the lawyer-client relationship. The services were those normally rendered by an investigator or claim agent in matters of this type and who occupy no professional relationship to the persons they represent. * * *

"Even assuming that the statements in question are the work product of the '

lawyer, concededly they are not beyond inspection upon a proper showing."

The foregoing authorities convince the Court that the documents sought to be produced in the instant case are not a part of the work product of a lawyer and are not privileged. Insofar as the work product of a lawyer is concerned, an investigator employed by the Department of Labor is in no different category than an investigator or claim agent employed by a private person or company, and the mere fact that an attorney gives such investigator or claim agent general instructions as to how to conduct the investigation is not sufficient to constitute the investigator's work a part of the work product of the lawyer directing him to make the investigation.

### Good Cause

Having decided that the requested documents are not privileged, the Court next must determine whether the defendant has shown "good cause" for the production of said documents.

At this point it may be noted that a logical argument may be made that good cause is not a prerequisite to the production of statements of witnesses since such statements are in the nature of facts rather than "documents" within the meaning of rule 34. For an excellent discussion of this question, see 4 Moore's Federal Practice, Second Edition, Section 26.23(8), Pages 1138–1140. However, the Court is of the opinion that witnesses' statements are "documents" within the meaning of the Rule and that good cause must be shown for their production. The author, in 4 Moore's Federal Practice, supra, recognizes that most courts require a showing of good cause, and at page 1140 of the same volume states:

"As a practical matter, however, it is probable that, at least until the Rules are further amended or the subject clarified by another Supreme Court decision, most courts will probably continue to require some sort of a showing before ordering production of statements of witnesses, even though not

garnered by an attorney. What showing, then, is sufficient?

"The broadest view is that expressed by Judge Kirkpatrick in the DeBruce case [DeBruce v. Pennsylvania R. Co., 6 F.R.D. 403]. While, as we have seen, he felt that copies of statements of witnesses could be called for by interrogatory without any showing of good cause, he stated that if such a showing were necessary, the moving party need show no more than 'that the accident occurred a considerable time, say a year ago, that the defendant through its claim department immediately interviewed witnesses and took statements, that the plaintiff was not in a position to do so until the bringing of suit and after the lapse of considerable time.' * * * A similar view was taken in Thomas v. Pennsylvania R. Co. (D.C.N.Y., 7 F.R.D. 610). Other courts, however, have required a more positive showing of good cause. These courts take the position that if the witnesses themselves are available to the party and can be interrogated or examined by him, there will ordinarily be no occasion for ordering production of their statements. Hence a showing will usually be required that 'the witnesses are no longer available or can be reached only with difficulty', or that the witnesses, even though they can be located, are hostile and will not furnish information to the party, or that for some other reason the information sought cannot be obtained elsewhere in spite of diligent effort by the party. Certainly the party should be allowed to inspect the statements of witnesses where he has been unable to interview them himself or where they have refused to talk, and he should not in ordinary circumstances be forced to take the depositions of the witnesses as an alternative to inspection of their statements. * * * But that holding (Hickman v. Taylor) was based on considerations of policy against invading the privacy of an attorney's files with-

out good reason. No such policy is involved in cases where the statements were taken by a claim agent or some other person not acting as a lawyer. In such a situation, the policy in favor of free access to the facts should ordinarily outweigh any element of prejudice or unfairness to the adverse party. We believe, therefore, with Judge Kirkpatrick, that even if a showing of good cause is required, in the normal case the bare fact of inequality of the parties with respect to gathering statements of witnesses should suffice. * *

"It is clear, of course, that a positive showing of good cause or of injustice resulting from failure to make discovery must be made where production is sought of statements taken by the attorney himself * * *".

See also, 166 A.L.R. 1442 et seq.

In the instant case, Mr. Clifton Wade, an attorney of record for the defendant, filed his affidavit in which he, after enumerating the reasons for which the requested material was needed and required, stated that, "the granting of the motion will expedite greatly the progress of the case and will facilitate the production of proof at the trial; it will narrow the issues in litigation and reduce the evidence by informing defendant of the specific persons, activities and factors which are relied upon by plaintiff to establish his action. If defendant is denied access to this data in the possession of plaintiff, it would have no other adequate means or remedy for obtaining this necessary information. Its alternative is to proceed to take separately the depositions of every one of the persons engaged in said hauling activities during the period referred to, to the extent that said persons were still subject to process. This would be a very lengthy and expensive proceeding. Even then, defendant could not be assured that it had the same data which is presently available in the files of plaintiff, as there could be material discrepancies in the recollection of the various persons examined in view of the time which has elapsed since the original statements were obtained."

In determining whether the defendant has established sufficient good cause for the production of the requested documents, the Court must choose between the liberal and the strict view regarding this question.

An illustration of the liberal view may be noted in Herbst v. Chicago, Rock Island & Pacific R. Co:, D.C.Iowa, 10 F.R.D. 14, at page 18, wherein the Court said:

"Although defendant by its counsel at the hearing on the motion agreed to produce all of the train crew involved in this accident at some convenient place in Iowa to afford plaintiff an opportunity to interrogate them by adversary deposition procedure as provided for by the rules, still, it was shown by the evidence of defendant's claim agent located at Des Moines that he took the statements in question from the train crew within a short time after the occurrence of the accident complained of and that said statements dealt with the physical facts occurring just prior and at the time of the accident in question. That the investigation by this claim agent and the statements taken by him from the train crew were consummated by him in the ordinary course of his duties as a claim agent and without any independent direction so to do by defendant's legal department. Even though the train crew and each of them might now be made available for interrogation by the plaintiff, the facts thereby disclosed would not necessarily be identical with the statements originally made by said train crew. Much time has elapsed, the memories of the witnesses involved would necessarily be dimmed with reference to the specific details of the events about which they originally had made statements. Their statements made immediately after the accident may and undoubtedly will lead plaintiff to the discovery of material and relevant facts upon which to adduce competent evidence at the trial of this cause. 'Good cause' is therefore shown." (As to statements of other

witnesses, the Court held that good cause was not shown.)

See, also, Atlantic Greyhound Corp. v. Lauritzen, 6 Cir., 182 F.2d 540; Dulansky v. Iowa-Illinois Gas & Electric Co., D.C. Iowa, 10 F.R.D. 146; Thomas v. Pennsylvania R. Co., D.C.N.Y., 7 F.R.D. 610; 4 Moore's Federal Practice, supra, at pages 1143-1144.

An illustration of a more stringent view may be found in Gebhard v. Isbrandtsen Co., Inc., D.C.N.Y., 10 F.R.D. 119, at page 120, wherein the Court said:

"The affidavit in opposition to the objections is made by plaintiff's counsel. It fails completely to show that the plaintiff has been prevented from getting the statements requested; indeed it would seem that he has not even tried to do so for it is only now, more than a year after the filing of the complaint, that he is seeking the names of those who may have made the statements if any were made. This affidavit states that the plaintiff is 'ill and on relief' and asks 'how can he possibly afford to search out witnesses and foreign doctors, and, assuming he could find them, go to the expense of sending attorneys all over the country to serve subpoenas on them and take their depositions.' No facts whatever are presented to support these assumptions and conclusions. The unopposed interrogatories will discover the names and addresses of the defendant's witnesses who, for all that now appears, may all be available in New York for full examination by the plaintiff in appropriate proceedings. * * * Plaintiff's attorney shows no more than that it would be more convenient for him to proceed as he has. Mere convenience of counsel, however, is not in my view good cause within the meaning of Rule 34."

See, also, Alltmont v. United States, 3 Cir., 177 F.2d 971; Hudalla v. Chicago, M., S. P. & P. R. Co., D.C.Minn., 10 F.R.D. 363; Palensar v. Isthmian S. S. Co., D.C. N.Y., 11 F.R.D. 552; McCaffrey v. United States, D.C.N.Y., 13 F.R.D. 512; Goldner v. Chicago & N. W. Ry. System, D.C.Ill., 13 F.R.D. 326; Lester v. Isbrandtsen Co., D.C.Tex., 10 F.R.D. 338.

Any attempt to harmonize the cases on "good cause" would prove futile, and an attempt to analyze the cases serves only to focus attention upon their inconsistencies. Cases involving good cause for the production of statements of witnesses taken by claim agents or investigators range from the liberal view enunciated by Judge Kirkpatrick in DeBruce v. Pennsylvania R. Co., 6 F.R.D. 403, to a view seemingly more stringent than the requirements of good cause stated in Hickman v. Taylor as to the actual work product of the lawyer. That is, in Hickman v. Taylor [329 U.S. 495, 67 S.Ct. 394], the Court stated that even as to the work product of a lawyer "production might be justified where the witnesses are no longer available or can be reached only with difficulty", whereas the case of Gebhard v. Isbrandtsen Co., Inc., supra and Lester v. Isbrandtsen Co., supra, indicate that even extreme difficulty in reaching witnesses may not amount to sufficient good cause to permit the inspection of statements of witnesses taken by persons other than attorneys.

A reading of the decisions and authorities and a study of the defendant's allegations of good cause lead the Court to believe and to hold that the defendant has established sufficient good cause to warrant the Court in requiring the plaintiff to produce the statements of the witnesses and transcripts of interviews taken by the plaintiff's investigators.

There is no doubt but that requiring the plaintiff to produce the statements will greatly expedite the preparation and trial of this case and will sharply reduce the expenses necessarily to be incurred in the preparation of the case. There seems to be no logical or legal reason for denying the defendant's request and requiring the defendant to take the depositions of every person who has allegedly been employed by the defendant as a milk hauler in an effort to ascertain whether they are or were,

in fact, employees of the defendant. With access to the said statements and transcripts, the defendant can quickly ascertain whether it will be necessary to take the depositions of any or all of these alleged employees, and the production of the said documents will undoubtedly lead to the discovery of evidence which is material and relevant to the subject matter of the plaintiff's cause of action.

Production of the documents will also do much to simplify the issues and bring out the true facts in the case.

Subsequent to the filing by the defendant of the motion for production of documents, the plaintiff filed a request for admission of facts by the defendant and also certain interrogatories, and defendant has answered both the request for admissions and the interrogatories fully and promptly. Defendant's response to plaintiff's request for admission of facts discloses that defendant "normally employs from approximately 81 to approximately 102 persons, being the employees within the plant, supervisory personnel, and fieldmen headquartering at said plant"; that defendant regularly each workweek produces evaporated milk, a substantial portion of which is regularly sold and delivered to customers in one or more of the States of Texas, Louisiana and Oklahoma; that the "raw milk used in the operations of the Pet Milk Company plant near Siloam Springs, Arkansas, is transported in trucks from the farms and dairies at which it is produced to defendant's said plant by milk haulers. Each of these milk haulers follows a designated route along which the raw milk is received from the various individual producers who have agreed to sell their milk to defendant"; and that "defendant does not make or keep any record of the number of hours worked per day or per week by the milk haulers delivering milk to its plant in Siloam Springs, Arkansas."

In view of the pleadings, the request for admission of facts and the response thereto, it is clear that ultimately the sole question in the instant case is whether the milk haulers are employees of the defendant or are independent contractors. In order to ascertain the status of the haulers, plaintiff has employed trained investigators to examine and study defendant's records and to interview and take statements from said haulers. Plaintiff has further propounded requests for admissions, as well as interrogatories, to the defendant in an effort to ferret out every fact that might throw some light upon the status of the milk haulers. In other words, a considerable time before the instant suit was filed the plaintiff had already completed an investigation of the defendant's operations and had interviewed the milk haulers (plaintiff's attorney stated in his affidavit that the investigation was completed on June 16, 1952), and since the suit was filed plaintiff has used freely the discovery provisions of the Federal Rules of Civil Procedure in an attempt to ascertain all the pertinent facts. Yet the plaintiff argues that defendant should not have access to the discovery procedure relative to discovery of documents, and contends that defendant has not shown good cause for the production of documents in the instant case.

Just what is the status of the parties at the present time? Plaintiff, through his systematized investigation prior to suit, and his free use of the discovery procedure since that time, has in his possession a substantial part, if not all, of the facts necessary to a determination of the status of the milk haulers. The only possible method by which defendant can unearth those same facts is by taking the deposition of every milk hauler that has delivered milk to its plant, and even then such depositions might not disclose the same facts as were disclosed in the statements taken by plaintiff's investigators more than a year ago, due to the witnesses' normal loss of memory during that period of time. Especially is this true since the investigators did not give the witnesses copies of their statements. Furthermore, the statements will be a valuable aid to the defendant for impeachment purposes.

Since the sole question for determination in the instant case is the status of the

milk haulers, for the most part the only pertinent evidence to be considered will be the records of the defendant and the testimony of the haulers. Both parties have access to defendant's records, and the Court feels that both parties should have access to the haulers' statements. In no other way can defendant protect itself against surprise without the expenditure of much money in the taking of depositions, and the record shows conclusively that defendant, in good faith, has revealed all the facts known to it.

In other words, the Court is of the opinion that the Rules were intended to be liberally construed and applied so as to facilitate the preparation and trial of cases, and to insure the discovery of the facts relevant to the subject matter of the action involved. Justice requires that cases be decided according to the law and the facts, and each party is entitled equally to know and have access to the facts relevant to the litigation. The fact that one party acts swiftly and first obtains the facts, by the taking of statements or otherwise, gives that party no inherent right to secrete those facts and withhold them from the adverse party. If the adverse party can demonstrate good cause for the production of these facts, the Court should order the facts to be produced.

In the last analysis, the determination of good cause depends upon the facts in the particular case, and in the instant case the Court feels that the defendant has shown good cause for the production of the statements of witnesses taken by employees or agents of the plaintiff who were not attorneys. Transcripts of interviews had by employees or agents of the plaintiff, who were not lawyers, would be in the nature of statements and defendant has likewise shown good cause for the production of such transcripts.

However, the defendant has not shown good cause for production of any statements or transcripts of interviews taken by attorneys employed by plaintiff, nor is the defendant entitled to the production of "All written reports, digests or summaries of interviews with, or oral statements made by, the" milk haulers.

Therefore, defendant's motion for production of documents should be sustained as to numbered paragraphs one, two and three, except with regard to statements and transcripts taken by attorneys of the plaintiff, and the motion should be denied as to numbered paragraph four of the said motion.

An order in accordance herewith should be entered.