James P. **MITCHELL**, Secretary of Labor, United States Department of Labor, Appellant,

v.

O. P. **BASS**, Sr., Nellie Maude Tolbert, Woodrow Wilkins, O. B. Clark, Mrs. C. E. Clark, Earle D. B. Garrison and Hayes Wilkins, Individually and Doing Business as Bass-Clark Lumber Company, Appellees.

No. 15850.

United States Court of Appeals Eighth Circuit.

Feb. 26, 1958.

Sylvia S. Ellison, Atty., U. S. Dept. of
Labor, Washington, D. C. (Stuart Roth-

man, Solicitor, Bessie Margolin, Asst. Solicitor, Washington, D. C., and Earl Street, Regional Atty., U. S. Dept. of Labor, Dallas, Tex., were with her on the brief), for appellant.

C. E. Wright, El Dorado, Ark. (J. K. Mahony, H. S. Yocum, Emon A. Mahony and Henry S. Yocum, Jr., El Dorado, Ark., were with him on the brief), for appellees.

Before SANBORN, JOHNSEN, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The plaintiff, the Secretary of Labor, appeals from an order dismissing his petition brought under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., to enjoin defendants from violating the minimum wage, overtime, and record-keeping provisions of the Act. The dismissal was entered pursuant to Rule 37 (b) (2) (iii) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which provides, among other things, that if a party refuses to obey an order made under Rule 34 the court may dismiss the action. The court had, pursuant to Rule 34, ordered the Secretary to produce for the defendants' inspection statements taken by the Secretary's investigators from four named employees of the defendants. The attorney representing the Secretary advised the court that he desired no extension of time within which to comply with the order and further advised the court that he had fully discussed disclosure with the Secretary, and that the Secretary had refused to comply. Thereupon, the court dismissed the action.

The Secretary urges that the court erred in ordering the production of the employees' statements for the following reasons, (1) the employees' statements taken pursuant to the Fair Labor Standards Act are privileged, at least to the extent that their production may not be required under Rule 34; and (2) defendants have not shown "good cause" under Rule 34.

The complaint, as supplemented by answers to interrogatories, charges that the defendants have failed to compensate eleven named employees at the minimum and overtime rates prescribed by the Act, and that the company's records did not reflect all the hours worked by said employees. The defendants contend their records are accurate, and that all employees have been fully paid. At a pre-trial conference the court stated that the primary issue for trial was the accuracy of the defendants' wage and hour records. At said conference, upon the request of the defendants for disclosure of the names of the witnesses to be used at the trial, the Secretary's attorney stated he would use the eleven named employees whom the Secretary claims were underpaid, some investigators, and possibly some of the defendants. Thus, it is apparent that the names of the informers were disclosed without objection. Shortly thereafter, defendants moved, under Rule 34, for a discovery of the statements given by the eleven employees to the Secretary's investigators.[1] This motion was overruled upon the ground that good cause had not been shown. The court's order states that it is without prejudice to the defendants' right to renew the motion in the event any of the eleven witnesses can not be located or refuse to give statements to the defendants. Thereafter, defendants renewed the motion, limiting their demand for

---

1. Attached to the discovery motion is an affidavit stating that each of the eleven employees had made a written statement to the Secretary's investigators. We find no direct denial of such allegation in the record. The record does not contain the response filed by the Secretary, although it appears from reported remarks of the trial judge that a response was filed. The Secretary has filed in this court an affidavit of his attorney stating, "I did not at any time state that we had written statements from those individuals." He does not state that the Secretary has no such statements. If the Secretary does not have the requested statements in his possession, he should have so advised the trial court. Upon this record we would not be justified in finding that the Secretary did not have the requested statements.

production to the statements of four of the named witnesses who had been interviewed and refused to give defendants a statement. Attached to the renewed motion is an affidavit stating that the defendants located the eleven witnesses, that statements were obtained from seven of such witnesses, but that four named witnesses refused to give a statement to the defendants. Three of such witnesses had terminated their employment with the defendants.

■ The record does not clearly show that the question of privilege was properly raised. The Supreme Court in United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727, holds that privilege is not to be lightly invoked. It must be raised by formal claim "lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." However, since the trial court considered the claim of privilege on its merits, we shall assume, without so deciding, that the issue of privilege is properly before us.

■ The Secretary bases his privilege contention upon both informer's privilege and executive privilege. Rule 34 provides for the production of documents "not privileged." The Supreme Court in the Reynolds case, supra, 345 U.S. at page 6, 73 S.Ct. at page 532, holds that the privilege referred to in the rule is evidentiary privilege, stating, "We think it should be clear that the term 'not privileged,' as used in Rule 34, refers to 'privileges' as that term is understood in the law of evidence."

We first consider the question of evidentiary privilege.

■ The informer's privilege is well established in the law of evidence. With reference to such privilege, the Court in Roviaro v. United States, 353 U.S. 53, at pages 59–60, 77 S.Ct. 623, at page 627, 1 L.Ed.2d 639, states:

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. Scher v. United States, 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151; In re Quarles and Butler, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080; Vogel v. Gruaz, 110 U.S. 311, 316, 4 S.Ct. 12, 14, 28 L.Ed. 158. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

"The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. *Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.*" (Emphasis added.)

Judge Miller, who entered the order appealed from, had occasion to consider substantially the same problems as are involved in the present case in Durkin v. Pet Milk Co., D.C.W.D.Ark., 14 F.R.D. 385. The opinion in the Pet Milk Co. case gives detailed and careful consideration to the applicable authorities upon both the privilege and the good cause issue. The court reaches the conclusion that the informers' statements were not privileged as confidential communications. The court points out that the disclosure of the witnesses' statements would not embarrass the informants in their social relations or their employment or endanger their safety, stating (14 F.R.D. at page 390):

"And certainly, as to the statements of witnesses whose names have been disclosed to the defendant, even if they were privileged in the

first instance, the privilege 'ceases and is unnecessary after the names of the informants are voluntarily given to the defendant.' \* \* \* ”

The statement just quoted is fully supported by Roviaro v. United States, supra, 353 U.S. at page 60, 77 S.Ct. at page 627, and the authorities cited therein at footnote 8.

■ The court advised counsel in the present case that he was basing his decision upon the principles established in the Pet Milk Co. case. We agree with the trial court that after the Government had voluntarily disclosed the names of the informers no further reason for applying the informer's privilege remained.

The claim of executive privilege is based upon 5 U.S.C.A. § 22, authorizing the head of each department to prescribe regulations, not inconsistent with law, for the government of his department, including the field of custody and use of records and papers; and upon the regulations issued pursuant thereto by the Secretary of Labor (29 C.F.R., Pocket Supplement, § 2.9). The regulations, in substance, authorize the Secretary to withhold documents when in his judgment it would be prejudicial to the Government or against public policy to produce them.

In our present case, the Secretary as plaintiff brought the action. We are here only concerned with the rights of the court in such a situation, and are not now concerned with the law applicable in situations where the Government is not a party to the litigation in which the production is sought.

■ Judge Miller, in the Pet Milk Co. case, 14 F.R.D. at page 390, sums up the reasons why executive privilege would not be available as follows:

“ \* \* \* In fact, this suit is a civil suit brought by the plaintiff against the defendant, and the plaintiff, while bringing the suit in his official capacity as Secretary of Labor, nevertheless is 'in no different position than any ordinary litigant and is, therefore, bound by the Rules of Civil Procedure in the same respects as an ordinary litigant.' \* \* \* ”

There is firm support for the trial court's position. Tobin v. Gibe, D.C. Del., 13 F.R.D. 16; United States v. Cotton Valley Operators Committee, D.C. W.D.La., 9 F.R.D. 719, affirmed 339 U.S. 940, 70 S.Ct. 793, 94 L.Ed. 1356; Walling v. Richmond Screw Anchor Co., D.C. E.D.N.Y., 4 F.R.D. 265; United States v. General Motors Co., D.C.N.D.Ill., 2 F.R.D. 528; 165 A.L.R. 1302, 1338, 1351. An excellent discussion of the applicable principles is found in 4 Moore's Federal Practice, para. 26.25 [6]. In discussing the Cotton Valley Operators Committee case, Moore states (pp. 1176–1177):

“ \* \* \* Note that the district court did not compel the Government to disclose its information, claimed by it to be secret and confidential; nor punish its lawyers for contempt. It carefully avoided making a decision that invaded the executive area. Within that area the executive's determination that certain of its records are not subject to disclosure is final. But where the Government is a litigant and assuming, of course, that the action before the court presents a justiciable case or controversy, as clearly the antitrust action did, then the question of disclosure, as it relates to the litigation, is within the judicial area. \* \* \* ”

■ We believe that under the circumstances of this case it was for the court to determine the question of executive privilege. If, as stated in the Reynolds case, this is not the type of privilege contemplated by Rule 34, the propriety of disclosure could properly be considered by the court under the good cause provisions of the rule. The disclosure of the statements of four employees whose names had already been made known, three of whom had previously terminated their employment with the defendants, could not result in any serious prejudice to the Secretary. We are satisfied the court committed no

error in determining that the statements should not be excluded either by reason of evidentiary or by reason of executive privilege.

■ The production of the statements was sought pursuant to Rule 34. This rule requires a showing of good cause. Defendants concede that they must show good cause. They contend that they have shown good cause, and the trial court so determined. Defendants have alleged that the statements of the four witnesses are relevant and material to the issue to be tried. It seems reasonable to suppose that the disclosure of the statements will clarify and simplify the issues to be tried and expedite the trial. It is undisputed that the four witnesses whose statements are sought have refused to give the defendants a statement. The refusal of a witness to give information has been held to constitute good cause for the production of the statement given by the witness to an adverse party. 4 Moore's Federal Practice, para. 26.23 [8], p. 1142–1143; Durkin v. Pet Milk Co., supra; Goldner v. Chicago & N.W. Ry. System, D.C.N.D.Ill., 13 F.R. D. 326; Viront v. Wheeling & Lake Erie Ry. Co., D.C.N.D. Ohio, 10 F.R.D. 45; Newell v. Capital Transit Co., D.C.D.C., 7 F.R.D. 732.

It is not here urged that the statements sought were part of the work product of a lawyer as was the situation in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. The statements were obtained by an investigator sent out by the Secretary. The Court in Hickman v. Taylor states (329 U.S. at page 507, 67 S.Ct. at page 392):

"We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise. * * * "

The Court also indicates that there are limitations upon discovery, and holds that the work product of the lawyer is not subject to discovery except upon strong showing of necessity.

In the Reynolds case, supra, the Court indicates that necessity for production should be balanced against privilege, stating (345 U.S. at page 11, 73 S.Ct. at page 533):

"* * * Where there is a strong showing of necessity, the claim of privilege should not be lightly accepted, but even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake. A fortiori, where necessity is dubious, a formal claim of privilege, made under the circumstances of this case, will have to prevail. * * * "

In Rovario v. United States, supra, the Court says (353 U.S. at page 62, 77 S.Ct. at page 628):

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

■ The trial court's opinion in the Pet Milk Co. case clearly demonstrates that he has given thorough consideration to the authorities bearing on the good cause issue. Necessarily, the

trial court must be given considerable discretion in the determination of good cause. The trial court has more information upon which to act than the appellate court. This is particularly true here as a record of the pre-trial conference is not before us. The Secretary has failed to establish under the record before us that the trial court abused his discretion in determining that good cause existed for the production of the statements of the four prospective witnesses. There is factual basis for a determination that such information was reasonably necessary for the preparation of the defense. Inasmuch as the names of the informing employees had already been disclosed and it was probable that they would be called to testify upon the trial, it is extremely doubtful whether the Secretary would suffer any serious prejudice in producing the requested statements.

The judgment appealed from is affirmed.

SANBORN, Circuit Judge, (concurring).

I have serious doubts that in this case the good faith refusal of the Secretary of Labor, on the ground of privilege, to produce the confidential statements taken by his investigators from four of eleven employees of the defendants, justified the dismissal of the action under Rule 37 (b)(2)(iii), even though the identity of the employees had been disclosed and the Secretary was the plaintiff in the action. In the circumstances of this case the statements which the Secretary was ordered to produce, reasonably can be regarded as unimportant to the defense (Cf. Scher v. United States, 305 U.S. 251, 254, 59 S.Ct. 174, 83 L.Ed. 151), and the public interest in requiring nondisclosure would seem to outweigh the defendants' interest in compelling disclosure. See and compare the opinion of Judge Nordbye in United States v. Deere & Co., D.C.Minn., 9 F.R.D. 523, 525–526, and Walling v. Comet Carriers, Inc., D.C.S.D.N.Y., 3 F.R.D. 442.

However, I must concede that language used by the Supreme Court in Roviaro v. United States, 353 U.S. 53, 60–61, 77 S.Ct. 623, 1 L.Ed.2d 639, justifies the action taken by the District Court, which to my mind was neither necessary nor just. I shall not dissent from the affirmance of the order appealed from.