James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

Emilio ROMA, Jr., Maria Roma, Frank Roma, Jr., and Catherine Roma, Partners Doing Business as F. Roma & Bros., Appellees.

No. 12780.

United States Court of Appeals Third Circuit.

Argued March 19, 1959.

Decided April 14, 1959.

**634**

Jacob I. Karrow, Washington, D. C. (Stuart Rothman, Solicitor, Bessie Margolin, Assistant Solicitor, United States Department of Labor, Washington, D. C., Ernest N. Votaw, Regional Atty., Chambersburg, Pa., on the brief), for appellant.

Abraham L. Freedman, Philadelphia, Pa. (Louis Lipschitz, Philadelphia, Pa., Seymour Kurland, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., on the brief), for appellees.

Before McLAUGHLIN and HASTIE, Circuit Judges, and MORRILL, District Judge.

MORRILL, District Judge.

Involved here is the question of the extent of what has been called the informer's privilege (in reality the government's privilege). Charging the defendants with violations of the Fair Labor Standards Act[1], the plaintiff seeks injunctive relief.

The business of the defendants is operating and keeping clean lavatories, wash-

---

[1]. Fair Labor Standards Act of 1938, June 25, 1938, c. 676, § 1, 52 Stat. 1060, Fair Labor Standards Amendments of 1949, c. 736, 63 Stat. 910, as amended August 12, 1955, 69 Stat. 711, 29 U.S.C.A. § 201 et seq.

rooms and barber shops in some stations of certain railroads. Interstate commerce engagement is conceded. The violations concern an alleged failure to pay wages in accordance with the statutory minimum and overtime requirements.[2]

In answering interrogatories propounded under F.R.Civ.P. 33, 28 U.S.C.A.,[3] the plaintiff admitted that he or persons acting in his behalf had received from a person or persons a report, statement, memorandum or testimony concerning the matters at hand. He also listed the names of 85 persons, employees or former employees of the defendants, *known or believed to have knowledge* concerning these matters.

The plaintiff objected to two certain interrogatories on the ground that they requested the plaintiff "to reveal the names of informants from whom he has obtained information in the course of investigations which he is by law required to make in pursuance of his duties of enforcement, which is contrary to public policy." Overruling this objection, the court ordered the plaintiff to answer these interrogatories (as limited by the same order) by furnishing the defendants with the names of the persons who had furnished the *written statements* above referred to. The plaintiff then filed a formal Claim of Privilege under General Order 72 of the Secretary of Labor promulgated under the Housekeeping Statute, 5 U.S.C.A. § 22.[4] The defendants thereupon successfully moved to dismiss under F.R.Civ.P. 37(b) (2). This appeal followed. At the argument

before this court, the plaintiff abandoned his former reliance on the Housekeeping Statute but pressed the general informer's privilege [5] and our opinion will revolve on this ground.

■ The privilege for communications by informers to the government is well established and its soundness cannot be questioned. 8 Wigmore, Evidence, § 2374 (3rd ed.); Rule 230, American Law Institute Model Code of Evidence; Rule 36, Uniform Rules of Evidence drafted by the National Conference of Commissioners on Uniform State Laws. The courts should be solicitous to protect against disclosures of the identity of informers. Bowman Dairy Co. v. U. S., 341 U.S. 214, 221, 71 S.Ct. 675, 95 L.Ed. 879.

■ The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of violations of law to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation. Roviaro v. U. S., 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639.

■ However, the privilege must give way where the disclosure of an informer's identity is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, Roviaro, supra, 353 U.S. at pages 60–61, 77 S.Ct. at page 628. As it is put in the Model Code and Uniform Rules, supra, the privilege exists unless the judge finds

---

2. 29 U.S.C.A. §§ 206, 207.

3. "Any party may serve upon any adverse party written interrogatories * *. Interrogatories may relate to any matters which can be inquired into under Rule 26(b), * * *."

4. "The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it. *This section does not authorize*

*withholding information from the public or limiting the availability of records to the public.*" R.S. § 161, 5 U.S.C.A. § 22. (The italicized portion represents the amendment of August 12, 1958, Pub.L. 85–619, 72 Stat. 547, not in force at the time of the ruling in question.)

5. Rule 26(b). "* * * the deponent may be examined regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party * * *, including * * * the identity * * * of persons having knowledge of relevant facts. * * *"

that the disclosure of the informer's identity is essential to assure a fair determination of the issues.

■ The term "not privileged" in Rule 26(b) undoubtedly refers to "privileges" as that term is understood in the law of evidence. U. S. v. Reynolds, 345 U.S. 1, 6, 73 S.Ct. 528, 97 L.Ed. 727, on Rule 34.

As the learned trial court pointed out, there has been no request for the *contents* of the statements; the request is merely for the names of persons who have given the statements—that is, for the identity of the informants, and that is the naked question before us. The court held that such identity "is essential to a fair determination of a cause." We disagree.

■ ■ It must be kept in mind that the issue in this case is whether the defendants failed to pay proper wages to one or more of its employees; the issue is not whether there was a statutory failure in regard to persons, employees or not, who have given written statements to the representatives of the plaintiff. Thus the question is narrowed down to whether the disclosure sought by the defendants is essential to assure a fair determination of the issues, with due regard being given to the defendants' right to prepare their defense properly. We conclude that the defendants' interest in being illumined as to informers is not strong enough to overcome the privilege in this instance. While we recognize that the discovery rules apply to actions in which the United States is a party, 4 Moore, Fed.Prac. ¶¶ 26.05, 26.25 [2] and that a trial is not a game of blindman's buff,[6] Johnson v. U. S., 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468 we cannot overlook the fact that the modern discovery rules do not abolish the policy of withholding information based on a claim of privilege.

■ True it is that the various instruments of discovery now serve as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to the issues. Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, *consistent with recognized privileges,* for the parties to obtain the fullest possible knowledge of the issues and facts before trial. Hickman v. Taylor, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451. No fixed rule as to disclosure is justifiable. One must balance the public interest in protecting the flow of information against the individual's right to prepare his defense, taking into consideration the particular circumstances of each case. Roviaro v. U. S., 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639.

In Scher v. U. S., 305 U.S. 251, 59 S.Ct. 174, 176, 83 L.Ed. 151, defense counsel undertook to question the arresting officers relative to the source of information which led them to observe the defendant's actions. Objections to these questions were sustained. In affirming, the Supreme Court said: "In the circumstances the source of the information which caused him to be observed was unimportant to petitioner's defense. The legality of the officers' action does not depend upon the credibility of something told but upon what they saw and heard— what took place in their presence. Justification is not sought because of honest belief based on credible information * * *. Moreover, as often pointed out, public policy forbids disclosure of an informer's identity unless essential to the defense * * *."

We now take note of several cases that are frequently relied upon in connection with the informer's privilege, most of which have been urged upon us by the appellees.

In Fleming v. Enterprise Box Co., D.C.S.D.Fla.1940, 36 F.Supp. 606, there was a complaint similar to ours but it failed to specify which employees failed to receive the proper wages. A bill of particulars was ordered under Rule 12 as to which employees were improperly compensated. The court properly held

6. Johnson v. U. S., 333 U.S. 46, in dissent at page 54, 68 S.Ct. 391, 92 L.Ed. 468.

that the information was not privileged, but informer identity was not ordered nor was it sought.

■ Fleming v. Bernardi, D.C., 1 F.R. D. 624 and Id., D.C.N.D.Ohio, 1941, 4 F.R.D. 270, involved the same type of wage violation. The defendant's interrogatory requested the names of employees to whom the defendant allegedly paid wages less than that prescribed by the statute, and the objection thereto was based on the privilege attaching to information in the government files. Holding that the plaintiff would have to disclose the names at trial, that about the only limitation or requirement for interrogatories under Rule 33 is that they be relevant, that when the United States brings suit it waives any privilege it might have and that the presumption is that the law (of no retaliation by an employer against identified employees) will be obeyed, the court ordered the interrogatory answered. While we agree that relevancy is important under Rule 33, we cannot overlook the fact that "privilege" is incorporated in Rule 33 by reference to Rule 26 and that it, too, is important. And while we agree that one instituting a civil suit is governed by F.R.Civ.P., we cannot subscribe to the suggestion that by instituting such a suit a plaintiff automatically waives any privilege accorded by the Rules, any more than the husband-wife privilege is waived if one of them institutes a suit. Lastly, it is to be noted that, unlike our case, the interrogatory did not ask for the identity of any informer.

In Walling v. Richmond Screw Anchor Co., D.C.E.D.N.Y.1943, 4 F.R.D. 265, the right to inspect the government's records for the names of the employees allegedly underpaid and for any statements made by such employees was granted. As in Bernardi, reliance was placed on the fact that at the trial the plaintiff would have to disclose the names of underpaid employees and on the principle that the government is barred by F.R.Civ.P.

In another similar case, Durkin v. Pet Milk Co., D.C.W.D.Ark.1953, 14 F.R.D. 385, inspection of statements was granted under Rule 34 based on the Richmond Screw case, supra.

Mitchell v. Bass, 8 Cir., 1958, 252 F.2d 513 was an appeal from a Rule 34 inspection order by the same judge who decided the Pet Milk case. Although privilege was claimed, the court said, at p. 517, "We agree with the trial court that after the government had voluntarily disclosed the names of the informers, no further reason for applying the informer's privilege remained."

As stated previously, the plaintiff merely listed the names of 85 persons known or believed to have knowledge concerning the matter in issue. The fact that a person has knowledge doesn't mean that he has informed others of his knowledge, and while the plaintiff may have implied that some of those having knowledge did give written statements, such broad information is not tantamount to a disclosure which waives the privilege. In the trial of the cause, the government possibly may rely on the defendants' books alone without using any of the 85 persons as witnesses, or it may use but one or two of them as witnesses, thus avoiding ultimate disclosure of the identity of some or all of the informers. Until such time, we can see no reason why the identity of the informers who have given written statements is essential to insure a fair trial. True, such disclosure might be of some indirect, casual or remote benefit to the defendant but if so, such elusive benefit is not weighty enough to overcome the public policy against disclosure. The relationship between an employer and employees is a sensitive one. N. L. R. B. v. Griswold Mfg. Co., 3 Cir., 1939, 106 F.2d 713, 722. The statutory prohibition against retaliation provides little comfort to an employee faced with the possibility of subtle pressures by an employer, which pressures may be so difficult to prove when seeking to enforce the prohibition.

A distinction must be drawn between telling an employer which employees were underpaid and who gave the infor-

**638**

mation about underpayment. Such informers, even if they are employees, are unlike informers whose identity is to be disclosed in relation to a question of probable cause.

Reversed.